UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

NOEL COWARD,

|  |  |
|---|---|
| | **COMPLAINT** |
| Plaintiff, | |
| | **JURY TRIAL** |
| -against- | **DEMANDED** |
| | |
| THE CITY OF NEW YORK, P.O. ELIOT J. ARIAS, | Docket No.: |
| Shield Number 18208 and P.O. LUCIOUS B. | |
| JOHNSON, Shield Number 4049, | |
| | |
| Defendants. | |

---

Plaintiff, NOEL COWARD, by his attorney, ROBERT J. DIGIANNI JR. ESQ., as and for his complaining of the defendants, hereby alleges the following:

## PRELIMINARY STATEMENT

1.      Plaintiff NOEL COWARD brings this action for compensatory damages, punitive damages and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violation of his civil rights, as said rights are secured by said statutes and the Constitutions of the State of New York and the United States.

## JURISDICTION

2.      The action is brought pursuant to 42 U.S.C. § 1983, § 1985 and § 1988, and the Fourth and Fourteenth Amendments to the United States Constitution.  Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(3) and (4) and the aforementioned statutory and constitutional provisions.

3.      Plaintiff NOEL COWARD further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any and all State law claims and causes of action which derive

from the same nucleus of operative facts and are part of the same case or controversy that gives rise to the federally based claims and causes of action.

## VENUE

4.      Venue is proper for the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1391(a), (b), (c) and § 1402(b) because the claims arose in this district and Plaintiff NOEL COWARD resides in this district.

## JURY DEMAND

5.      Plaintiff NOEL COWARD respectfully demands a trial by jury of all issues in this matter pursuant to Fed.R.Civ.P. 38(b).

## THE PARTIES

6.      Plaintiff, NOEL COWARD ("Mr. Coward"), is and was at all relevant times hereto a citizen of the United States and a resident of the County of Kings and State of New York.

7.      Defendant, The City of New York ("City"), is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York and on information and belief, The City receives federal funding and is a "public entity" as defined by 42 U.S.C. § 12131..

8.      The City is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible.  The City assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risks attach to the public consumers of the services provided by the NYPD.

9.      New York City Police Department ("NYPD"), is a charter agency of the City authorized to perform law enforcement functions in and for the City.  The City maintains the NYPD, a duly authorized public authority and/or police department, authorized to perform all functions of a

police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, City of New York.

10.     Defendant, P.O. ELIOT J. ARIAS (Shield No. 18208) ("P.O. Arias"), is and was at all times relevant hereto an employee of The City, duly appointed and acting as a police officer in NYPD, acting in the course and scope of his employment as such and in furtherance of the interests and business of said employer.

11.     Defendant, P.O. LUCIOUS B. JOHNSON (Shield Number 4049) ("P.O. Johnson"), is and was at all times relevant hereto an employee of The City, duly appointed and acting as a police officer in NYPD, acting in the course and scope of his employment as such and in furtherance of the interests and business of said employer.

12.     Defendant, P.O. Arias refers to known and unknown named police officers who were at all relevant times hereto employees of defendant NYPD and were acting under the supervision of said department and according to their official duties.

13.     Defendant, P.O. Johnson refers to known and unknown named police officers who were at all relevant times hereto employees of defendant NYPD and were acting under the supervision of said department and according to their official duties.

14.     That at all times relevant herein, P.O. Arias was a supervisory employee of, and an agent, servant and/or employee of The City and NYPD, acting in the course and scope of his employment as such and in furtherance of the interests and business of said employer, and otherwise performed and engaged in conduct incidental to the performance of his functions in the course of his duties. Each defendant officer is sued individually and in his supervisory capacity.

15.     That at all times relevant herein, P.O. Johnson was a supervisory employee of, and an agent, servant and/or employee of The City and NYPD, acting in the course and scope of his employment as such and in furtherance of the interests and business of said employer, and otherwise performed and engaged in conduct incidental to the performance of his functions in the course of his duties.  Each defendant officer is sued individually and in his supervisory capacity.

16.     The individual-defendants' acts hereafter complained of were carried out intentionally, recklessly, with malice, and in gross disregard of Mr. Coward's rights.

17.     That at all times relevant herein, the City operated, maintained, managed, supervised and controlled a police department as part of and in conjunction with its municipal functions.

18.     That at all times relevant herein, P.O. Arias was an employee of The City and NYPD and that The City and NYPD are responsible for the actions and conduct of the individual defendants under the theory of *respondeat superior*.

19.     That at all times relevant herein, P.O. Johnson was an employee of The City and NYPD and that The City and NYPD are responsible for the actions and conduct of the individual defendants under the theory of *respondeat superior*.

20.     That at all times hereinafter mentioned and upon information and belief, The City and/or NYPD employed and supervised the defendant officers named herein.

21.     Upon information and belief, the defendant police officers were graduates of the Police Academy of The City of New York, where they received training and instruction set forth and sanctioned by The City and NYPD.  Further, while at The Police Academy and intermittently thereafter, Police Officers including the named defendants receive training and instruction formulated by The City and NYPD.

22.     At all times relevant hereto, The City had the duty to competently and sufficiently train, within the Police Academy and at the Command, Precinct and Patrol levels, the defendant officers, to conform their conduct to a standard for the protection of individuals, such as plaintiff, against the unreasonable risk of harm by conducting themselves in such a manner so as not to intentionally, wantonly and/or negligently inflict injuries to citizens such as plaintiff herein.

23.     At all times relevant hereto, The City had the duty to competently and sufficiently train within the Police Academy and at the Command, Precinct and Patrol levels, the defendant officers, in the protections of the rights of plaintiff under the Constitution and the Bill of Rights.

24.     At all times hereinafter mentioned, the individual defendants were acting under color of law.

25.     At all times hereinafter mentioned, the individual defendants' acts constituted state action.

26.     That at all times hereinafter mentioned, the individual defendants were on duty and/or acting as employees, agents or servants of The City and NYPD and were also present at the same time and in the same place as plaintiff as aforesaid.

27.     That the individual police officers are being sued here in their official as well as individual capacities.

## STATEMENT OF FACTS

28.     That or about August 30, 2013, Mr. Coward was a lawful citizen abiding by all laws, statutes and ordinances of the State of New York and the United State of America.

29.     That on or about August 30, 2013, the sidewalk abutting 2121 Beekman Place in the County of Kings and State of New York was and remains a public roadway ("roadway").

30.     On or about August 30, 2013, Mr. Coward was a pedestrian lawfully traversing upon the sidewalk at the time and place as stated herein.

31.     On August 30, 2013, Mr. Coward was unlawfully approached and improperly detained by the defendant police officers.

32.     That on August 30, 2013, NYPD officers, including the defendant police officers respective to each other did not protect Mr. Coward from the defendant police officers' unlawful and illegal conduct,

33.     On August 30, 2013, P.O. Arias and P.O. Johnson baselessly and falsely accused Mr. Coward of being in possession of crack cocaine.

34.     That on August 30, 2013, the alleged crack cocaine was allegedly found inside of a locked van, which Mr. Coward had no association with, did not own, nor have access to in any manner whatsoever.

35.     That on August 30, 2013, P.O. Arias and P.O. Johnson improperly arrested Mr. Coward.

36.     On August 30, 2013, there were no witnesses or evidence to substantiate the officers' claims and the officers admitted to Mr. Coward that they did not witness him commit any of the alleged acts.

37.     On August 30, 2013, Mr. Coward was falsely arrested and unlawfully imprisoned and baselessly and fraudulently charged with PL 220.03 (Criminal Possession of a Controlled Substance in the Seventh Degree).

38.     That the criminal complaint was executed by P.O. Arias.

39.     That in the criminal complaint, P.O. Arias fraudulently alleges that the allege crack cocaine was allegedly found in a van "…at 421 Empire Boulevard County of Kings, State of New York."

40.     That the address of 421 Empire Boulevard, Brooklyn, New York is actually the address of the 71st Precinct, demonstrating the impossibility and falsehood of the defendant officers' allegations.

41.     That at that time and all relevant times herein, the individual defendants submitted no evidence to substantiate their claims against Mr. Coward.

42.     That at all times relevant herein, P.O. Arias and P.O. Johnson handcuffed Mr. Coward unnecessarily and unreasonably tight and painfully restrained his arms behind his back thereby causing injury.

43.     That the arresting officer(s) knowingly, intentionally, recklessly or negligently placed Mr. Coward in excessively tight hand-cuffs, causing his pain and suffering and emotional distress.

44.     That on or about August 30, 2013, P.O. Arias and P.O. Johnson unlawfully threw Mr. Coward into the NYPD vehicle, without any cause, basis or justification.

45.     Mr. Coward did not resist or obstruct his arrest in any way.

46.     That on or about August 30, 2013, the individual defendants transported Mr. Coward to the 71st Precinct, without his consent and without any cause, basis or justification.

47.     That on or about March 26, Mr. Coward remained falsely and unlawfully imprisoned at the 71st Precinct, without any cause, basis or justification.

48.     That defendants, their agents, servants, and/or employees unlawfully subjected Mr. Coward to a strip search.

49.     That at all times relevant herein, Mr. Coward was taken from the 71st Precinct to Central Booking where he remained falsely and unlawfully imprisoned for more than approximately twenty nine (29) hours, without any cause, basis or justification where he was forced to defend himself and answer for the aforementioned unjust and baseless criminal charges, which were the subject of the malicious prosecution that was initiated by the defendants.

50.     That at all times relevant herein, as a result of the false arrest, Mr. Coward was falsely and improperly imprisoned for approximately twenty nine (29) hours and was forced to defend himself against criminal charges that were baseless and maliciously initiated.

51.     That the arrest of Mr. Coward by the individual defendants was perpetrated without a warrant or other legal process and without probable cause.

52.     That on or about August 30, 2013, P.O. Arias and P.O. Johnson made false representations, accusations, allegations and complaints concerning Mr. Coward to agents, servants and/or employees of NYPD and The City and the Kings County District Attorney's Office acted on the representations of the defendants herein and initiated criminal proceedings against the plaintiff herein.

53.     Furthermore, the defendants knew that the District Attorney's Office would rely upon their representations and the defendants knew that the District Attorney's Office would file criminal charges and prosecute the plaintiff based upon their representations and the allegations and facts that these named individual defendants communicated to the District Attorney's Office.

54.     Additionally, the individual defendants knew that the allegations that they communicated to the District Attorney's Office were false, exaggerated, inaccurate and untrue but they communicated said allegations nonetheless, knowing that plaintiff would be subjected to a criminal prosecution and knowing that the plaintiff's freedom and liberty would be jeopardized and,

if convicted upon the false charges, plaintiff would be incarcerated, thereby losing his freedom and liberty.

55.     The individually named defendants, state actors, were acting pursuant to a policy, custom and practice, which was formulated, designed and implemented by the defendant City and NYPD, and which policy, custom and practice required the individually named defendants to make a certain, predetermined number and amount of arrests each week, month and year, irrespective of the conditions or lack of criminal conduct that existed in their precinct or sector during their shifts or tours.

56.     That these policies, customs and practices also encouraged, taught, instructed and/or required police officers to make arrests, stops, detentions and to target members of the public based on their appearance, race, ethnicity and irrespective of their conduct, lawful or otherwise, thereby violating the rights of the public, including the plaintiff herein.

57.     These policies, customs and practices were designed and formulated by the defendants City and NYPD and implemented and effectuated by its officers, by their very nature violated the rights of the public, and violated the rights of the plaintiff herein.

58.     That at all times relevant herein, the agents, servants and/or employees of NYPD and The City, including, but not limited to, P.O. Arias and P.O. Johnson, knew or reasonably should have known that Mr. Coward was innocent of all allegations against him.

59.     That at all times relevant herein, the agents, servants and/or employees of NYPD and The City, including, but not limited to, P.O. Arias and P.O. Johnson, actually knew or reasonably should have known that the allegations against Mr. Coward were fabricated and fraudulent.

60.     That at all times relevant herein, the agents, servants and/or employees of NYPD and The City, including, but not limited to, P.O. Arias and P.O. Johnson, conspired to fraudulently and maliciously accuse Mr. Coward of crimes of which he was innocent ("malfeasance").

61.     That defendants knew, and/or reasonably should have known, that there was no basis whatsoever to charge Mr. Coward under the false charges because, at all times herein, he was the sole occupant of his own motor vehicle which was not picking up or collecting a street hail.

62.     Moreover, the complete and utter lack of merit and baseless nature of any conceivable criminal investigation and/or criminal prosecution of Mr. Coward was readily apparent and patently obvious to all defendants but yet said criminal investigation and/or criminal prosecution of Mr. Coward continued unabated, causing serious injury to Mr. Coward and infringing, violating and rupturing his civil rights.

63.     That defendants' their agents, servants, and/or employees unlawfully and falsely arrested and imprisoned Mr. Coward in furtherance to the malfeasance.

64.     That at all times relevant herein, defendants, their agents, servants and/or employees, while acting in concert, maliciously and with the intent to injure Mr. Coward, and without just cause or any right to do so, handcuffed, detained, jailed and restrained Mr. Coward against his will, thereby depriving him of his liberty.

65.     That the criminal charges filed against Mr. Coward were falsely and maliciously fabricated by defendants, their agents, servants and/or employees based on false and incomplete information provided by defendants, their agents, servants and/or employees, in violation of Mr. Coward civil rights and in furtherance of the malfeasance.

66.     That at all times relevant herein, P.O. Arias and P.O. Johnson, with disregard for proper, lawful, appropriate, correct and effective investigative behaviors and procedures,

investigated, stopped, detained, accused, arrested and charged Mr. Coward when it was not right, just, lawful, proper or necessary to do so.

67.     That at all times relevant herein, defendants, their agents, servants and/or employees had no cause or basis to stop, question or search Mr. Coward.

68.     That at all times relevant herein, P.O. Arias and P.O. Johnson placed Mr. Coward under arrest for crimes that he did not commit.

69.     That at all times relevant herein, Mr. Coward was innocent of the false charges made against him further to the malfeasance.

70.     That at all times relevant herein, defendants, their agents, servants and/or employees acted maliciously and intentionally.

71.     That at all times relevant herein, defendants, their agents, servants and/or employees knew or should have known that Mr. Coward was innocent of the crime charged.

72.     That at all times herein mentioned, and without proof that Mr. Coward was in any way connected to a crime, or that any crime was, in fact, committed, and without reasonable suspicion to stop Mr. Coward, and without probable cause to detain or arrest Mr. Coward, defendants, their agents, servants and/or employees individually, and acting in concert, knowingly, unlawfully, wrongfully and in furtherance of the malfeasance fabricated the false charges against Mr. Coward and set these charges forth in false and fabricated a criminal complaint that was executed by P.O. Arias.

73.     The criminal complaint and reports against plaintiff were and are false and fraudulent.

74.     Based upon the false criminal complaint and complaint reports prepared, upon information and belief, by the defendant employees, the Criminal Court arraigned Mr. Coward on the false charges.

75.     That at all times herein, defendants, their agents, servants and/or employees, all of whom were acting in the performance of their employment, within the scope of their authority and in furtherance of policies and practices implemented by The City and NYPD.

76.     That at all times herein, defendants, their agents, servants and/or employees have an unlawful policy and practice that utilizes racial profiling when conducting investigations and performing its duties.

77.     That Mr. Coward was released from Central Booking after seeing the judge.

78.     That Mr. Coward was required to repeatedly appear in court to defend himself from the false charges.

79.     That the false charges against Mr. Coward were dismissed and sealed on November 18, 2014.

80.     Mr. Coward has suffered and continues to suffer damage as a result of the events described herein.

81.     The City and NYPD had actual and constructive notice of P.O. Arias and P.O. Johnson's propensities for misconduct but failed to do anything to mitigate the danger that their continued employment presented to the public at large, including the plaintiff herein.

82.     That at all times relevant herein, The City and NYPD did fail to train and/or retrain and/or reinstruct P.O. Arias and P.O. Johnson after acquiring notice of their defective and dangerous propensities.  The City and NYPD did negligently hire, retain and train the individually named defendants to the detriment of the public and to the plaintiff herein.

83.     By reason of the foregoing acts of the defendants, and as a direct and proximate result of the acts of the defendants, Mr. Coward suffered severe and permanent personal injuries and damages, and upon information and belief, will continue to suffer in the future.

84.     By reason of the foregoing acts of the defendants, Mr. Coward was caused severe and intense emotional and psychological anguish, distress and embarrassment and will continue to suffer same in the future.

85.     By reason of the foregoing, Mr. Coward was compelled to, and did necessarily incur legal fees and did necessarily pay and become liable therefore, and will necessarily incur similar legal fees in the future.

## PROCEDURAL PREREQUISITES

86.     This action has been commenced within three (3) years after the cause of action of plaintiff accrued.

87.     Plaintiff has duly complied with all of the conditions precedent to the commencement of this action.

## FIRST CAUSE OF ACTION
DEPRIVATION OF RIGHTS
UNDER THE UNITED STATES CONSTITUTION THROUGH 42 U.S.C. § 1983
(Against Individual-Defendants)

88.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

89.     The individual defendants, under color of state law, subjected the plaintiff to the foregoing acts and omissions, thereby depriving plaintiff of his rights, privileges and immunities secured by the Fourth and Fourteenth Amendments to the United States Constitution, including, without limitation, deprivation of the following constitutional rights: (a) freedom from unreasonable seizure of his person, including the excessive use of force; and (b) freedom from deprivation of liberty without due process of law.

90.    The officer-defendants' deprivation of plaintiff's constitutional rights resulted in the injuries and damages set forth above.

## SECOND CAUSE OF ACTION
### SUPERVISORY LIABILITY FOR DEPRIVATION OF RIGHTS
### UNDER THE UNITED STATES CONSTITUTION THROUGH 42 U.S.C. § 1983
### (Against All Defendants)

91.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

92.    By failing to remedy the wrongs committed by his subordinates, in failing to properly train, screen, supervise, or discipline his subordinates, and by personally participating in the constitutional injuries set forth above, the individual defendants, in their individual and official capacities, caused damage and injury in violation of plaintiff's rights guaranteed under the United States Constitution, including its Fourth and Fourteenth Amendments, through 42 U.S.C. § 1983.

93.    As a result of the foregoing, plaintiff was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured.

## THIRD CAUSE OF ACTION
### FAILURE TO INTERVENE - FOURTH AMENDMENT - 42 U.S.C. § 1983
### (Against Individual Defendants)

94.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

95.    Members of the NYPD have an affirmative duty to assess the constitutionality of interactions between their fellow members of service and civilians and to intervene where they observe another member of the Police Department or other municipal agency employing unjustified and excessive force against a civilian.

96.     The individual defendants' false arrest and unlawful imprisonment of plaintiff was obviously unjustified under the circumstances yet the individual defendants failed to take any action or make any effort to intervene, halt or protect the plaintiff from being subjected to false arrest and unlawful imprisonment by other individual defendants.

97.     The individual defendants' violations of plaintiff's constitutional rights by failing to intervene in other defendants' clearly unconstitutional false arrest and unlawful imprisonment of plaintiff resulted in the injuries and damages set forth above.

### FOURTH CAUSE OF ACTION
*MONELL* CLAIM -42 U.S.C. § 1983
(Against Defendants City, NYPD)

98.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

99.     At all times material to this complaint, The City and NYPD had de facto policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein, to wit, use of unreasonable force.

100.    All of the acts and omissions by the defendants described above were carried out pursuant to overlapping policies and practices of The City and NYPD which were in existence at the time of the conduct alleged herein and were engaged in with the full knowledge, consent, and cooperation and under the supervisory authority of the defendant City and its agency, the NYPD.

101.    Defendants City and NYPD by their policy-making agents, servants and employees, authorized, sanctioned and/or ratified the individual defendants' wrongful acts; and/or failed to prevent or stop those acts; and/or allowed or encouraged those acts to continue.

102.    The acts complained of were carried out by the aforementioned individual defendants in their capacities as municipal officers and officials pursuant to customs, policies,

usages, practices, procedures and rules of The City and NYPD, all under the supervision of ranking officers of the NYPD.

103.    The aforementioned customs, practices, procedures and rules of the City and the NYPD include, but are not limited to, the following unconstitutional practices:

    a.  Using excessive force on individuals;

    b.  Failing to supervise, train, screen, instruct and discipline officers and encouraging their misconduct, including but not limited to the individual defendants named herein;

    c.  Discouraging officers from reporting the corrupt or unlawful acts of other officers;

    d.  Retaliating against officers who report police misconduct; and

    e.  Failing to intervene to prevent the above-mentioned practices when they reasonably could have been prevented by a supervisor or other agent or employee of the NYPD and/or The City.

104.    The existence of aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct, as documented in the following civil rights actions filed against the City and analogous prosecutions of police officers:

    a.  Carmody v. City of New York, 05-CV-8084 (HB), 2006 U.S. Dist. LEXIS 83207 (S.D.N.Y.) (police officer alleges that he was terminated for cooperating with another officer's claims of a hostile work environment);

    b.  Powers v. City of New York, 04-CV-2246 (NGG), 2007 U.S. Dist. LEXIS 27704 (E.D.N.Y.) (police officer alleges unlawful retaliation by other police officers after testifying about corruption within the NYPD);

    c.  Nonnemann v. City of New York, 02-CV-10131 (JSR) (AJP), 2004 U.S. Dist. LEXIS 8966 (S.D.N.Y.) (former NYPD lieutenant alleging retaliatory demotion and early retirement after reporting a fellow officer to IAB and CCRB for the officer's suspicionless, racially-motivated stop-and-frisk of a group of Hispanic youth);

d. <u>Barry v. New York City Police Department</u>, 01-CV-10627 *2 (CBM), 2004 U.S. LEXIS 5951 (S.D.N.Y.) (triable issue of fact where NYPD sergeant alleged retaliatory demotion and disciplinary charges in response to sergeant's allegations of corruption within her unit and alleged that the NYPD had an "unwritten but pervasive custom of punishing officers who speak out about police misconduct and encouraging, if not facilitating, silence among officers");

e. <u>Walton v. Safir</u>, 99-CV-4430 (AKH), 122 F.Supp.2d 466 (S.D.N.Y. 2000) (factual findings after trial that a 12-year veteran of NYPD was terminated in retaliation for criticizing the racially-motivated policies of the NYPD's Street Crime Unit and for alleging that such policies led to the NYPD shooting death of Amadou Diallo);

f. <u>White-Ruiz v. City of New York</u>, 93-CV-7233 (DLC) (MHD), 983 F.Supp. 365, 380 (S.D.N.Y. 1997) (holding that the NYPD had an "unwritten policy or practice of encouraging or at least tolerating a pattern of harassment directed at officers who exposed instances of police corruption"); and,

g. <u>Ariza v. City of New York</u>, 93-CV-5287 (CPS), 1996 U.S. Dist. LEXIS 20250 at*1 4 (E.D.N.Y.) (police officer alleges retaliatory duty assignments and harassment in response to his allegations about a racially-discriminatory workplace; on motion for summary judgment, the Court held that the police officer had established proof of both a widespread usage of a policy to retaliate against police officers who expose police misconduct and a failure to train in the police department).

105.    Furthermore, the existence of the aforesaid unconstitutional customs and practices, **specifically with regard to the failure to supervise, train, instruct and discipline officers and encouraging their misconduct,** are further evidenced, *inter alia,* by the following:

a. In the matter of <u>Raymond Dyer v. New York City Police Department, et ano.</u>, Bronx Supreme Index No.: 301394/13, at an Examination Before Trial on May 23, 2014, defendant police officer Waqar Ali, Shield Number 20144 testified in sum and substance that the extent of education and training pertaining to the laws that police officers are charged to enforce consists of a one (1) day class, which focuses primarily on how to use the penal code index to look up the penal law to justify an arrest that has already been effectuated. *Ali deposition transcript at P. 10.* Ninety-five (95%) of the testing by the Police Academy is multiple choice and limited to the New York City Police Department Patrol Guide, not penal law. <u>Id</u> at p. 11. Although field testing is performed, none of it is utilized to test a cadet's knowledge of the law. <u>Id</u> at p. 12. Zero follow up training is provided with regard to continuing education of penal law. <u>Id</u> at p. 13. Officers learn the law "on the job" and have available to them at the stationhouse a copy of the penal code to reference "if any situation arises". <u>Id</u> at p. 13.

b. The Report of the Commission to Investigate Allegations of Police Corruption and the Anti-Corruption Procedures of the Police Department ("Mollen Commission Report"), dated July 7, 1994, states:

> In the face of this problem [of corruption], the [NYPD] allowed its systems for fighting corruption virtually to collapse. It has become more concerned about the bad publicity that corruption disclosures generate that the devastating consequences of corruption itself. As a result, its corruption control minimized, ignored and at times concealed corruption rather than root it out. Such an institutional reluctance to uncover corruption is not surprising. No institution wants its reputations tainted – especially a Department that needs the public's confidence and partnership to be effective. A weak and poorly resources anti-corruption apparatus minimizes the likelihood of such taint, embarrassment and potential harm to careers. Thus there is a strong institutional incentive to allow corruption efforts to fray and lose priority – which is exactly what the Commission uncovered. This reluctance manifested itself in every component of the Department's corruption controls from command accountability and supervision, to investigations, police culture, training and recruitment. For at least the past decade, the system designed to protect the Department from corruption minimized the likelihood of uncovering it.1

c. Accordingly, in 1990, the Office of the Special Prosecutor, which investigated charges of police corruption, was abolished.

d. In response to the Honorable Judge Weinstein's ruling of November 25, 2009 in <u>Colon v. City of New York</u>, 09-CV-00008 (E.D.N.Y.), in which he noted a "widespread ... custom or policy by the city approving illegal conduct" such as lying under oath and false swearing, Police Commissioner acknowledged, "When it happens, it's not for personal gain.  It's more for convenience.2

e. Regarding defendant City's tacit condonement and failure to supervise, discipline or provide remedial training when officers engage in excessive force, the Civilian Complaint Review Board is a City agency, allegedly independent of the NYPD that is responsible for investigating and issuing findings on complaints of police abuse and misconduct.3  When it does, however, Police Commissioner controls whether the

---

1 Mollen Commission Report, pp. 2-3, *available at* http://www.parc.info/client_files/Special%20Reports/ 4%20-%20Mollen%20Commission%20-%20NYPD.pdf.

2 Oren Yaniv and John Marzulli, *Kelly Shrugs Off Judge Who Slammed Cops*, New York Daily News, December 2, 2009, *available at* http://www.nydailynews.com/news/ny_crime/2009/12/02/2009-12-02_kelly_shrugs_off_judge_who_rips_lying_cops.html.

3 In 2006, out of more than 10,000 allegations that were fully investigated, the CCRB substantiated only 594 (about 6%).  In 2007, out of more than 11,000 allegations that were fully investigated, the CCRB substantiated only 507 (about 5%).  *See,*  CCRB  Jan.-Dec.  2007  Status  Report  at  p.  19,  *available  at*

NYPD pursues the matter and he alone has the authority to impose discipline on the subject officer(s). Since 2005, during former Police Commissioner Kelly's tenure, only one-quarter of officers whom the CCRB found engaged in misconduct received punishment more severe than verbal "instructions." Moreover, the number of CCRB-substantiated cases that the NYPD has simply dropped (i.e., closed without action or discipline) has spiked from less than 4% each year between 2002 and 2006, to 35% in 2007, and approximately 30% in 2008. Alarmingly, the NYPD has refused to prosecute 40% of the cases sent to it by the CCRB in 2009.[4]  As a result, the percentage of cases where the CCRB found misconduct but where the subject officers were given only verbal instructions or the matter was simply dropped by the NYPD rose to 66% in 2007. Substantiated complaints of excessive force against civilians accounted for more than 10% of the cases that the NYPD dropped in 2007 and account for more than 25% of cases dropped in 2008.[5]

106.    The existence of the aforesaid unconstitutional customs and practices, **specifically with regard to the practice or custom of discouraging police officers from reporting the corrupt or unlawful practices of other police officers and of retaliating against officers who report misconduct,** are further evidenced, *inter alia,* by the following:

a.  Former New York County District Attorney Robert Morgenthau has been quoted as acknowledging that, in the NYPD, there is a "code of silence," or a "code of protection" that exists among officers and that is followed carefully;

b.  In 1985, former NYPD Commissioner Benjamin Ward, testifying before a State Senate Committee, acknowledged the existence of the "code of silence" in the NYPD;

c.  Former NYPD Commissioner Robert Daly wrote in 1991 that the "blue wall of solidarity with its macho mores and prejudices, its cover-ups and silence, is reinforced every day in every way."

107.    The existence of the described unlawful *de facto* policies and/or well-settled and widespread customs and practices is known to, encouraged and/or condoned by supervisory and

---

http://www.nyc.gov/html/ccrb/pdf/ccrbann2007 _A.pdf. Upon information and belief, the low rate of substantiated complaints is due in part to the above-noted *defacto* policy and/or well-settled and widespread custom and practice in the NYPD whereby officers refuse to report other officers' misconduct or tell false and/or incomplete stories, inter alia, in sworn testimony and statements given to the CCRB, to cover-up civil rights violations perpetrated by themselves or fellow officers, supervisors and/or subordinates.

4 Christine Hauser, *Few Results for Reports of Police Misconduct,* New York Times, October 5, 2009, at A 19.

policy-making officer and officials of the NYPD and the City, including, without limitation, Police Commissioner.

108.    The actions of the officer-defendants resulted from and were taken pursuant to the above- mentioned *de facto* policies and/or well-settled and widespread customs and practices of the City, which are implemented by members of the NYPD, of engaging in systematic and ubiquitous perjury, both oral and written, to cover-up federal law violations committed against civilians by either themselves of their fellow officers, supervisors and/or subordinates. They do so with the knowledge and approval of their supervisors, commanders and Police Commissioner who all: (i) tacitly accept and encourage a code of silence wherein police officers refuse to report other officers' misconduct or tell false and/or incomplete stories, *inter alia,* in sworn testimony, official reports, in statements to the CCRB and the Internal Affairs Bureau ("IAB"), and in public statements designed to cover for and/or falsely exonerate accused police officers; and (ii) encourage and, in the absence of video evidence blatantly exposing the officers' perjury, fail to discipline officers for "testilying" and/or fabricating false evidence to initiate and continue the malicious prosecution of civilians in order to cover-up civil rights violations perpetrated by themselves of fellow offices, supervisors and/or subordinates against those civilians.

109.    The policies, practices, customs, and usages, and the failure to properly train, screen, supervise, or discipline, were a direct and proximate cause of the unconstitutional conduct alleged herein, causing injury and damage in violation of plaintiff s constitutional rights as guaranteed under 42 U.S.C. § 1983 and the United States Constitution, including its Fourth and Fourteenth Amendments.

---

5 Daily News, *Editorial: City Leaders Must Get Serious About Policing the Police,* August 20, 2008.

110.    The City and NYPD knew or should have known that the acts alleged herein would deprive the plaintiff of his rights, in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

111.    The City and NYPD are directly liable and responsible for the acts of the individual defendants because they repeatedly and knowingly failed to properly supervise, train, instruct, and discipline them, and because it repeatedly and knowingly failed to enforce the rules and regulations of the City and NYPD, and to require compliance with the Constitution and laws of the United States.

112.    Despite knowledge of such unlawful *de facto* policies, practices and/or customs, these supervisory and policy-making officers and officials of the NYPD and the City, including Police Commissioner, have not taken steps to terminate these policies, practices and/or customs, do not discipline individuals who engage in such polices, practices and/or customs, or otherwise properly train police officers with regard to the constitutional and statutory limits on the exercise of their authority, and instead sanction and ratify these policies, practices and/or customs through their active encouragement of, deliberate indifference to and/or reckless disregard of the effect of said policies, practices and/or customs upon the constitutional rights of persons in the City of New York.

113.    The aforementioned City policies, practices and/or customs of failing to supervise, train, instruct and discipline police officers and encouraging their misconduct are evidenced by the misconduct detailed herein.

114.    Specifically, pursuant to the aforementioned City policies, practices and/or customs, the individual defendants felt empowered to falsely arrest plaintiff. Pursuant to the aforementioned City policies, practices and/or customs, defendants failed to intervene in or report other defendants' violation of plaintiff's rights or subsequent perjury.

115.    Plaintiff's injuries were a direct and proximate result of the defendant, City and the NYPD's wrongful *de facto* policies and/or well-settled and widespread customs and practices and of the knowing and repeated failure of the defendants to properly supervise, train and discipline their officers.

116.    The actions of the individual police defendants resulted from and were taken pursuant to *de facto* policies and/or well-settled and widespread customs and practices of The City, which were implemented by agents or employees of the NYPD, of employing wholly unprovoked and excessive force.

117.    Defendants, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate officers and inspectors and were directly responsible for the violation of the plaintiff's constitutional rights.

118.    Plaintiff's injuries were a direct and proximate result of defendants The City's and the NYPD's well-settled and widespread custom and practice at issue in this litigation.

119.    As a result of the foregoing, plaintiff was deprived of liberty, suffered emotional distress, humiliation, costs and expenses, and was otherwise damaged and injured.

### FIFTH CAUSE OF ACTION
MALICIOUS ABUSE OF PROCESS UNDER 42 U.S.C. § 1983

120.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

121.    Defendants abused the legal process to place Mr. Coward under arrest.

122.    Defendants arrested Mr. Coward in order to obtain a collateral objective outside the legitimate ends of the legal process.

123.    Defendants acted with intent to do harm to Mr. Coward without excuse or justification.

124.    That solely as a result of the negligence, recklessness and/or intentional acts of defendants as aforesaid, Mr. Coward suffered great humiliation, degradation, emotional injuries; loss of freedom; deprivation of his state and federal constitutional rights; serious, severe and permanent personal injuries and disabilities; pain and suffering and loss of enjoyment of life; economic harm; was rendered sick, sore, lame and disabled; sustained severe mental anguish, nervous shock and great physical pain and has been damaged accordingly in an amount exceeding the jurisdictional limits of all lower courts, which would otherwise have jurisdiction.

## PRAYERS FOR RELIEF

WHEREFORE, plaintiff demands judgment against the defendants jointly and severally and prays for relief as follows:

a.    That he be compensated for violation of his constitutional rights, pain, suffering, mental anguish, and humiliation; and

b.    That he be awarded punitive damages against the individual defendants; and

c.    That he be compensated for attorneys' fees and the costs and disbursements of this action; and

d.    For such other further and different relief as to the Court may seem just and proper.

Dated: Brooklyn, New York
       August 30, 2016

By: _____
    ROBERT J. DI GIANNI JR., ESQ.
    Attorney for Plaintiff
    159 20th Street, Suite 1B-20
    Brooklyn, New York 11232
    (718) 245-6980

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

NOEL COWARD,

Plaintiff,

-against-

THE CITY OF NEW YORK, P.O. ELIOT J. ARIAS, Shield Number 18208 and P.O. LUCIOUS B. JOHNSON, Shield Number 4049,

Defendants.

## COMPLAINT

**ROBERT J. DI GIANNI JR., ESQ.**
ATTORNEY FOR PLAINTIFF
159 20TH STREET, SUITE 1B-20
BROOKLYN, NEW YORK 11232
TELEPHONE: 718-245-6980
FAX: 888-431-9136
rjd@digiannilaw.com